Larry R. Laycock (4743)
larry.laycock@dentons.com
David W. Tufts (8736)
david.tufts@dentons.com
Madeline A. Hock (16770)
madeline.hock@dentons.com
Landon T. Laycock (17259)
landon.laycock@dentons.com
**DENTONS DURHAM JONES PINEGAR, P.C.**
111 South Main Street, Suite 2400
Salt Lake City, UT  84111
Telephone: (801) 415-3000
Facsimile: (801) 415-3500

*Attorneys for Defendant The Annex, LLC d/b/a Helm Home*

**IN THE UNITED STATES DISTRICT COURT**

**IN AND FOR THE DISTRICT OF UTAH**

| | |
|---|---|
| BARCLAY BUTERA DEVELOPMENT INC. *et al*,<br><br>                     Plaintiffs,<br><br>vs.<br><br>THE ANNEX, LLC, d/b/a HELM HOME *et al*,.<br><br>                     Defendants. | **DEFENDANT HELM HOME'S MOTION TO DISMISS**<br><br>Civil No. 2:23-CV-00633-HCN-JCB<br><br>Judge Howard C. Nielson, Jr. |

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendant The Annex, LLC d/b/a Helm Home ("Helm Home"), by and through its undersigned counsel, moves to be dismissed from the Complaint filed by Plaintiffs Barclay Butera Development, Inc., Barclay Butera, Inc., and Barclay Butera (collectively "Plaintiffs" or "Barclay") for failure to state a claim against Helm Home upon which relief can be granted.

**CONCISE STATEMENT OF RELIEF SOUGHT AND GROUNDS FOR RELIEF**

Barclay has failed to state any claim for relief upon which relief can be granted against Helm Home. Accordingly, pursuant to Rule 12(b)(6), Helm Home must be dismissed as a defendant in the action and the claims against Helm Home must be dismissed.

In short, beginning in or around the spring of 2020, Helm Home worked with Defendant Mario Ferreria ("Ferreria"). Ferreria was a senior executive of Barclay. Ferreria met with Chris Ross ("Ross"), of Helm Home, and informed Helm Home that he was in charge and responsible for the business operations of Barclay's Park City, Utah operations, including Barclay's interior design and furniture contracts. Ferreria approached Helm Home, on behalf of Barclay, with a proposed business relationship between Helm Home and Barclay. Ferreria explained that Barclay had been contacted by various homeowners in Park City, Utah who wanted Barclay to stage and furnish their homes as part of the homeowners' efforts to sell their properties. Ferreria further explained that, due to the COVID-19 pandemic, Barclay did not have sufficient furniture in its showroom or warehouse to stage its customers' homes in Park City. As a result, Ferreria requested that Helm Home put bids together for Barclay's clients with estimates for how much it would cost Helm Home to stage/furnish the homes with Helm Home's showroom furniture.

1

Pursuant to Ferreria's request, Helm Home agreed to prepare bids, but Helm Home never dealt directly with any of Barclay's clients (the Park City homeowners) during this process—Ferreira dealt with them exclusively. Ferreria would send Helm Home pictures of the homes that needed to be staged, Helm Homes would prepare a staging bid and send it to Ferreira, and Ferreira would present the bid to the homeowner. If the homeowners accepted the bid, Helm Home would then proceed to stage the home with Helm's showroom furniture. Helm Home had no further involvement.

The events outlined by Barclay's Complaint fail to state a claim against Helm Home. The reality is that Helm Home engaged with Barclay, through Ferreira, on a limited basis, but in any event, Helm Home only acted pursuant to Ferreira's actual authority as an agent of Barclay. Thus, Helm Home should be dismissed from this action as a matter of law.

## STATEMENT OF FACTS

Although Helm Home disputes many of the allegations of Barclay's Complaint, the allegations are assumed to be true for purposes of this motion to dismiss only. *See generally Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Among Barclay's allegations are the following which are numbered with the paragraph numbers of Barclay's Complaint. The paragraphs of the Complaint quoted below include the entirety of the allegations that pertain to Helm Home. Again, Helm Home denies many of these allegations, but they are identified as "facts" below so that they can be evaluated as to whether they state a claim upon which relief can be granted.

> 13.    Barclay Butera and the Barclay Butera Brand and group of companies, including BBD and BBI, has established itself as a prominent and respected luxury interior design and lifestyle brand with a rich history spanning over two decades in the State of California and throughout the U.S. Its impeccable craftsmanship and exquisite taste have garnered widespread acclaim. BBI operates from distinguished offices in Fountain Valley, California, Newport Beach,

2

California, Corona del Mar, California, and Park City, Utah, where its designers excel in both primary and secondary home residences.

…

17. Leveraging his extensive experience in the fashion industry, Mr. Butera has built a remarkable following and established his brand as a national icon. To protect his unique identity, he has obtained two United States Registered Trademarks, safeguarding the distinct word mark "Barclay Butera" and an elegant logo featuring a script capital "B" enclosed within a stylish square box, complemented by the iconic "Barclay Butera" text rendered in an artful font. *See* Exhibit 1 (Word Mark) and Exhibit 2 (Design Mark).

18. Mr. Ferreira served as a trusted senior executive at BBI for over 15 years, responsible for directing and managing BBI's operations in California and spearheading business development in Park City, Utah. See Exhibit 3.

…

20. Helm Home, also known as The Annex, LLC, has gained recognition for its curated collection of furniture used in staging residences throughout Utah.

…

22. While working with Helm Home, and during his time of employment with BBI, Mr. Ferreira shamelessly misappropriated Butera's and BBD's trademarked name and logo, leveraging them without proper authorization or due compensation in a self-serving business relationship with Helm Home and Mr. Chris Ross.

23. In this supposed partnership, Mr. Ferreira's assisted Helm Home with various aspects of staging proposals, including client procurement, site visits, meticulous design review, submission of proposals, seamless execution, and payment collection. These activities were carried out during BBI's designated working hours, at BBI's expense, and without any legal consent or license to exploit the Butera, BBD, or BBI name. See Exhibit 4.

24. As part of this collaboration, Mr. Ferreira directly engaged with prospective staging clients, using Mr. Butera's name, BBD's logo, and BBI's email platform. He presented himself as the Barclay Butera Director of Business Development. See Exhibit 4. Within these correspondences, Mr. Ferreira utilized Butera's and BBD's name, logo, and his position to attach staging or furniture proposals to procure clients for Helm Home, intentionally misleading unsuspecting clients.

25. All staging proposals sent by Mr. Ferreira through his company email indicated: "Staging Services Provided by: Helm in conjunction with Mario Ferreira at Barclay Butera." See Exhibit 4. Furthermore, the Helm Home staging properties falsely claimed that the staging designs would be finalized by Mr. Ferreira, giving the false impression that these proposals had BBI's approval. In reality, these designs were never shown to BBI or Mr. Butera.

## ARGUMENT

### I. Rule 12(b)(6) Legal Standard

The U.S. Supreme Court has established a federal pleading requirement created, in part, to "avoid ginning up the costly machinery associated with our civil discovery regime on the basis of 'a largely groundless claim'" *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011) (citation omitted). As part of that requirement, a complaint must contain sufficient factual matter that, when accepted as true, will "nudge [] [its] claims across the line from conceivable to plausible." *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570 (2007). If a complaint "stops short of the line between possibility and plausibility of entitlement to relief," such a complaint is ripe for a Rule 12(b)(6) motion. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations and citation omitted) (stating that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face"). In determining the sufficiency of a claim, the court must accept all non-conclusory allegations as true. S*ee Iqbal*, 556 U.S. at 679; *see also Firestone Fin. Corp. v. Meyer*, 796 F.3d 822, 825–28 (7th Cir. 2015) (explaining that, in deciding a motion to dismiss, a court must focus on the sufficiency of the factual allegations and not whether they are likely to be true)).

The U.S. Supreme Court cases of *Twombly* and *Iqbal* introduced a "new, further refined standard" to the Rule 12(b)(6) motion. *Kan. Penn Gaming*, 656 F.3d at 1214. In the Tenth Circuit that standard is this: "to withstand a motion to dismiss, a complaint must have enough

4

allegations of fact, taken as true, to state a claim to relief that is plausible on its face." *Id.* The Tenth Circuit recognizes two working principles that guide the District Judge when applying this standard.

"First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* Accordingly, "mere labels and conclusions," and formulaic recitations of the elements" will not suffice. A plaintiff must offer specific factual allegations to support each claim. *Id.*; *see also Morman v. Campbell County Mem. Hosp.*, 632 F. App'x 927, 931 (10th Cir. 2015) (unpublished).

"Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Kan. Penn Gaming*, 656 F.3d at 1214 (quoting *Iqbal*, 556 U.S. at 679). "In other words, a plaintiff must offer sufficient factual allegations to raise a right to relief above the speculative level." *Id.* (quoting *Twombly*, 550 U.S. at 555). "What this means in any given case will depend entirely on the nature of the claims and the context in which they arose." *Morman*, 632 F. App'x at 932 (quoting *Kan. Penn Gaming*, 656 F.3d at 1215).

## II.     Counts 1, 4, 5, and 9: Trademark Infringement, Unfair Competition, and False Designation of Origin

### a. Trademark Infringement

"In order to establish a claim of trademark infringement under § 1114(1)(a) of the Lanham Act, four elements must be established: (1) the mark is valid and legally protected; (2) the mark is owned by the plaintiff; (3) the defendant used the trademark in commerce without consent; and (4) defendant's use of the trademark will create the likelihood of confusion." *SanMedica Int'l, LLC v. Amazon.com, Inc.*, No. 2:13-CV-00169-DN, 2016 WL 527055, at *5 (D. Utah Jan. 20, 2016). "These same elements must be shown to establish a claim for common law

5

trademark infringement." *Equitable Nat'l Life Ins. Co., Inc. v. AXA Equitable Life Ins. Co.*, 434 F. Supp. 3d 1227, 1239-40 n.60, (D. Utah 2020).

The "central inquiry" in a trademark infringement claim is whether there is a likelihood of consumer confusion. *Hornady Mfg. Co. v. Doubletap,* 746 F.3d 995, 1001 (10th Cir. 2014). Likelihood of consumer confusion is present when consumers are likely to be confused as to the source or origin of goods or services offered under the mark in questions. *1-800 Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229, 1238 (10th Cir. 2013) ("consumers may experience direct confusion of source when they develop the mistaken belief that the plaintiff is the origin of the defendant's goods or services… [o]r consumers may experience reverse confusion of source when they mistakenly believe that the defendant is the origin of the plaintiff's goods or services."). It is also relevant for the Court to consider evidence of actual confusion. *Hornady,* 746 F. 3d at 1001.

In this case, Barclay adequately alleged the fact that it owns a valid and legally protected mark, however, Barclay has not alleged that Helm Home used Barclay's mark in commerce without Barclay's consent. First, Barclay does not even so much as make a conclusory allegation that Helm Home used Barclay's mark in commerce. Barclay only asserts that "Mr. Ferreira directly engaged with prospective staging clients, using Mr. Butera's name, BBD's logo, and BBI's email platform. He presented himself as the Barclay Butera Director of Business Development." (Complaint, ¶ 24). There is no factual allegation that Helm Home ever used the marks in commerce. Rather, Barclay makes the conclusory assertion that "Helm Home, has unlawfully appropriated both the Word and Design Marks without obtaining the necessary consent" (Complaint, ¶ 38), without providing any facts to support the conclusion. *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 678 (2009) ("Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, **we are not bound to accept as true a legal conclusion couched as a factual allegation**.") (emphasis added).

Second, even if Helm Home used Barclay's mark, it would have been pursuant to Ferreira's instruction and consent as Barclay's agent. "[W]here a principal has, by his voluntary act, placed an agent in such a situation that a person of ordinary prudence, conversant with business usages and the nature of the particular business, is justified in presuming that such agent has authority to perform, on behalf of his principal, a particular act, such particular act having been performed, the principal is estopped as against such innocent third person, from denying the agent's authority to perform it." *Burdick v. Horner Townsend & Kent, Inc.*, 2015 UT 8, ¶ 21, 345 P.3d 531, 539 (cleaned up); *Ditty v. CheckRite, Ltd., Inc.*, 973 F. Supp. 1320, 1334 (D. Utah 1997) ("To be vicariously liable for the acts of [its agent] under a theory of apparent authority, [the principal] must conduct itself in such a way as to clothe its [agent] with apparent authority to perform the [acts] committed and there must be reasonable reliance on that apparent authority on the part of the injured party.") (cleaned up).

Additionally, Barclay has not adequately alleged consumer confusion. Barclay fails to make any allegations regarding public facing statements or representations made by Helm Home which could potentially mislead consumers. At best, Barclay makes allegations that Ferreira has made public facing representations (Complaint, ¶ 24 ("Mr. Ferreira directly engaged with prospective staging clients…"), but Barclay entirely fails to allege what Helm Home did, or said, which could cause confusion. Moreover, as discussed below, Barclay fails to adequately state

any claim which requires a showing of likelihood of confusion. Barclay has also failed to present the Court with any allegations of actual consumer confusion. *Hornady,* 746 F. 3d at 1001.

Thus, any claim against Helm Home for trademark infringement should be dismissed for failure to state a claim.

    b.  Unfair Competition

Under Utah common law, "unfair competition includes—but is not limited to—passing off, palming off, imitating, and causing or likely causing confusion or deception." *Siskin Enterprises, Inc. v. DFTAR, LLC*, No. 2:20-CV-00304-JNP, 2021 WL 734955, at *3 (D. Utah Feb. 25, 2021) (quoting *Overstock.com, Inc. v. SmartBargains, Inc*., 192 P.3d 858, 859–60 (Utah 2008)).

The analysis required for an unfair competition claim is also focused on the likelihood of confusion. As explained above, Barclay has not adequately alleged the likelihood of confusion. Thus, any claims against Helm Home requiring a showing of likelihood of confusion, including unfair competition, should be dismissed as a matter of law.

    c.  False Designation of Origin

To establish a prima facie case of false designation of origin under the Lanham Act, a plaintiff must show (1) that the plaintiff had enforceable trademark rights in the mark or name, and (2) that the defendant made unauthorized use of it such that consumers were likely to confuse the two. *1-800 Contacts, Inc. v. Lens.com, Inc*., 722 F.3d 1229, 1238 (10th Cir. 2013). The typical scenario subjecting an offending party to liability under the Lanham Act for passing off is a close cousin of other trademark infringement actions, except that it is available to those with unregistered marks. *Id.* Barclay has not alleged that any unregistered marks have been used

inappropriately. *See* Complaint, ¶¶ 125. Moreover, as explained above, Barclay has failed to allege a likelihood of confusion. Thus, the claim for false designation of origin against Helm Home as fails as a matter of law.

### III. Count 3: False Advertising under Section 43(a) of the Lanham Act

"The Lanham Act creates a cause of action for unfair competition through misleading advertising or labeling." *POM Wonderful, LLC v. The Coca-Cola Co*. 134 S.Ct. 2228, 2234 (2014). To prevail on a false-advertising claim under the Lanham Act, a plaintiff must satisfy the following elements: (1) a false or misleading statement of fact; that is (2) used in a commercial advertisement or promotion; that (3) deceives or is likely to deceive in a material way; (4) in interstate commerce; and (5) has caused or is likely to cause competitive or commercial injury to the plaintiff. *Lexmark v. Static Control Components*, 134 S. Ct. 1377, 1384 (2014). The Supreme Court noted that a Plaintiff suing under 35 U.S.C. § 1125(a) "ordinarily must show economic or reputational injury flowing directly from the deception wrought by the defendants advertising…" *Lexmark,* 134 S. Ct. at 1391. In affirming that *Static Controls* has a right to its day in court due to its lost sales, the Supreme Court noted "that occurs when deception of consumers causes them to withhold trade from plaintiff." *Lexmark,* 134 S. Ct. at 1391. The protection of the Lanham Act "may be invoked only by those who allege an injury to a commercial interest in reputation or sales." *POM Wonderful LLC*, 134 S. Ct. at 2234.

Barclay fails to allege Helm Home made a false or misleading statement of fact in a commercial advertisement or promotion that is likely to deceive. Barclay makes a formulaic recitation of this element (*see* Complaint, ¶ 71), but Barclay does not allege any facts identifying an alleged false or misleading statement of Helm Home. Barclay's Complaint focuses on the

9

actions of Ferreira and Ferreira's representations. Barclay never alleges that Helm Home advertised or promoted its partnership with Ferreira. Moreover, Barclay fails to allege that Helm Home made any such statements or used any such advertisements in interstate commerce. Barclay simply alleges that Helm Home advertised "nationwide", but Barclay does not explain where these advertisements were placed, what these advertisements said, or who these advertisements reached. Complaint, ¶ 70. Barclay's conclusory allegations is not sufficient to allege a claim for false advertising.

Finally, Barclay does not allege that Helm Homes alleged deception has caused consumers to "withhold trade from plaintiff". *Lexmark,* 134 S. Ct. at 1391. Barclay, again, makes a conclusory allegation that it has been harmed, and Helm Home's actions are likely to result in "competitive or commercial harm". This is not enough. Barclay does not outline any facts which lead to such a conclusion. Moreover, Barclay only alleges that "[t]his is **likely** to influence the public's decision to purchase furniture or utilize staging services from Defendant instead of Plaintiff". Complaint, ¶ 73 (emphasis added). Barclay does not allege that such a result has in fact happened, on that it *may* happen. This is not sufficient under the *Twombly* and *Iqbal* pleading standards.

### IV.   Count 8: Conspiracy to Commit Breach of Fiduciary Duty

"The tort of civil conspiracy requires proof of five elements by clear and convincing evidence: (1) a combination of two or more persons, (2) an object to be accomplished, (3) a meeting of the minds on the object or course of action, (4) one or more unlawful, overt acts, and (5) damages as a proximate result thereof." *Pyper v. Reil*, 2018 UT App 200, ¶ 16, 437 P.3d 493 (quotation marks and citations omitted). The Utah Supreme Court found that to establish a claim

10

for civil conspiracy, a plaintiff "must plead some kind of meeting of the minds [between the defendants] to harm [the plaintiff] in an unlawful manner." *Harvey v. Ute Indian Tribe of the Uintah & Ouray Reservation,* 2017 UT 75, ¶ 70.

Again, Barclay's allegations are woefully insufficient. Barclay explicitly acknowledges that Ferreira was a "trusted senior executive" who was "acting on behalf of [Barclay] during the expansion of [Barclay's] business in Park City." (Complaint, ¶ 18, 113). Helm Home's actions as described in the Complaint were limited in scope to interfacing with Ferreira, Barclay's agent. *See Burdick,* 2015 UT 8, ¶ 21 ("the principal is estopped as against such innocent third person, from denying the agent's authority to perform it"). Barclay is estopped from denying Ferreira's authority with respect to his interactions with Helm Home. Moreover, Barclay does not plead that Helm Home and Ferreira came to a meeting of the minds to harm Barclay in an unlawful manner. Because Barclay fails to allege such, Barclay fails to state a claim for conspiracy to commit breach of fiduciary duty.

V.   **Count 10: Appropriation of Name or Likeness**

A plaintiff must establish three element to demonstrate appropriation of name: "(1) appropriation, (2) of another's name or likeness that has some intrinsic value, (3) for the use or benefit of another." *Mitchell v. Wells Fargo Bank*, 355 F. Supp. 3d 1136, 1155 (D. Utah 2018) (cleaned up)(citing *Cox v. Hatch*, 761 P.2d 556 (Utah 1988)).

Barclay does not allege that Helm Home used its name and/or likeness for its own benefit. Rather, Barclay alleges that Ferreira improperly used Barclay's name and/or likeness. (Complaint, ¶ 22 ("Mr. Ferreira shamelessly misappropriated Butera's and BBD's trademarked name and logo")). Barclay then makes conclusory allegations, without alleging supporting facts,

11

that Helm Home "employed [Barclay's] name without permission". (Complaint, ¶ 134). Without more, Barclay does not adequately state a claim for appropriation of name or likeness against Helm Home.

## CONCLUSION

Based on the foregoing, Helm Home respectfully requests that it be dismissed from the Complaint as a matter of law because Plaintiffs have failed to state a claim for relief under Fed. R. Civ. P. 12(b)(6) against Helm Home. Helm Home further requests that Plaintiffs not be given leave to amend their complaint as any attempt to remedy the deficiencies in the causes of action would be futile.

DATED: October 13, 2023.

**DENTONS DURHAM JONES PINEGAR, P.C.**

*/s/* Madeline A. Hock
Larry R. Laycock
David W. Tufts
Madeline A. Hock
Landon T. Laycock
*Attorneys for Defendant The Annex, LLC d/b/a Helm Home*

## CERTIFICATE OF SERVICE

I hereby certify that on October 13, 2023 the foregoing was filed with the Court and served upon all counsel of record via email and/or via the court's electronic filing system.

Charles M.R. Vethan
Joseph Lanza
cvethan@vethanlaw.com
jlanza@vethanlaw.com
edocs@vethanlaw.com
VETHAN LAW FIRM, P.C.
Two Memorial City Plaza
820 Gessner, Suite 1510
Houston TX 77024
*Attorneys for Barclay Butera Development, Inc.; and Barclay Butera*

Richard A. Kaplan
Brenden P. Hoffman
rkaplan@yahlaw.com
brendenhoffman@yahlaw.com
YOUNG HOFFMAN, LLC
175 South Main Street, Suite 850
Salt Lake City, UT 84111
*Attorneys for Mario Ferreira*

    /s/ Angie Stettler